# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

GISELLE FRITz,

                                    **Plaintiff,**

v.

LVNV FUNDING, LLC,
RESURGENT CAPITAL SERVICES, LP,
MANDARICH LAW GROUP, LLP,
DARLEEN V. KARASZEWSKI, and
NATIONS RECOVERY CENTER, INC.,

                                  **Defendants.**

-------------------------------------------------------------x

Index No.

**COMPLAINT AND JURY DEMAND**

Plaintiff Giselle Fritz, by her attorneys CAMBA Legal Services, Inc., and The Law Office of Ahmad Keshavarz, as and for her complaint against Defendants LVNV Funding, LLC ("LVNV"), Resurgent Capital Services, LP ("Resurgent"), Mandarich Law Group, LLP ("Mandarich"), Darleen V. Karaszewski ("Ms. Karaszewski"), and Nations Recovery Center, Inc. ("NRC") for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. sec.* (the "FDCPA") and New York General Business Law § 349, alleges as follows:

## PRELIMINARY STATEMENT

1.     In 2007, Plaintiff Giselle Fritz was sued by Defendant LVNV in Kings County Civil Court for an alleged Sears retail credit card debt she did not owe (*LVNV Funding, LLC v. Giselle Fritz*, Index No. CV-53571-07). Ms. Fritz never received the summons and complaint for this action due to the process server executing a false affidavit of service. LVNV used the false affidavit of service to obtain a default judgment. In 2011, Ms. Fritz discovered the case and, through counsel, had the default judgment vacated. Despite the judgment being vacated and the case dismissed, in the eight years since that dismissal, Defendant LVNV Funding, LLC, and its agents, Defendant Mandarich Law Group, LLC, and Defendant Nations Recovery Center,

Inc., have sent multiple letters attempting to collect on the vacated judgment, in violation of the FDCPA and New York GBL§ 349. This continuous illegal debt collection, systematically collecting on non-existent judgments, is the general practice of the Defendants as reflected in several similar FDCPA lawsuits against them in just the last five years.

## JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because the dispute involves predominant issues of federal law under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. sec.* (the "FDCPA").

3.      The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because they are so related to Plaintiff's claims within the Court's original jurisdiction as to form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue is proper because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Kings County, New York.

## THE PARTIES

5.      Plaintiff Giselle Fritz ("Ms. Fritz") is an individual who resides in Kings County, New York.

6.      Ms. Fritz is a consumer as defined by 15 U.S.C. § 1692a(3) because she is alleged to owe a debt to Defendant LVNV Funding, LLC, arising from a Kings County Civil Court judgment that was vacated nearly eight years ago.  Plaintiff's alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5) because it was incurred primarily for family, personal, or household purposes. The collection lawsuit stated the debt arose from a "consumer credit

transaction."

7.　　Defendant LVNV Funding, LLC ("LVNV") is a limited liability company organized under the laws of the State of Delaware. LVNV engages in business in New York State and this suit arises out of LVNV's business in New York State.

8.　　LVNV's primary (indeed sole) purpose is to purchase charged off consumer accounts after they are in default with the putative original creditor and have those debts collected upon, and LVNV regularly does so. To date, LVNV or its agents have, across multiple states, sent hundreds of thousands of collection letters, reported hundreds of thousands of accounts on consumers' credit reports monthly, made hundreds of thousands of collection telephone calls, and pursued at least tens of thousands of collection lawsuits. LVNV is therefore a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

9.　　Defendant Resurgent Capital Services, LP ("Resurgent") is a limited partnership organized under the laws of the State of Delaware. Resurgent engages in business in New York State and this suit arises out of Resurgent's business in New York State.

10.　　Resurgent is the master servicer for putative charged off consumer debts owned by LVNV. Resurgent is assigned rights to seek to collect the charged-off consumer debts from LVNV and others, but is not assigned title or ownership to the debt, which remains with LVNV or other debt buyer. Resurgent then either collects the charged off consumer debt directly, or indirectly through its agents, non-attorney debt collectors (such as NRC) or attorney debt collectors (such as Mandarich). Resurgent's primary (indeed sole) purpose is to collect upon charged off consumer accounts owned by debt buyers such as LVNV, and Resurgent does so regularly. Resurgent is therefore a "debt collector" as defined in 15 U.S.C. § 1692a(6).

11.     For the reasons stated in the prior paragraph, LVNV Funding LLC is jointly and severally liable for the acts it takes through its agent and master servicer Resurgent Capital Services, LP.  Therefore, this complaint will refer to these two entities jointly and severally as the LVNV Defendants.

12.      Defendant Mandarich Law Group, LLP ("Mandarich") is a debt collection law firm organized under the laws of the State of California, with attorneys admitted to practice in around 22 states.  Mandarich engages in business in New York State and this suit arises out of Mandarich's business in New York State.

13.     Mandarich's principal purpose is the collection of consumer debts alleged to be due to another, and it regularly does so.  Specifically, Mandarich regularly collects or attempts to collect, directly or indirectly, debts asserted to be due another by filing thousands of collection lawsuits, collecting on putative judgments, and sending collection letters, across multiple U.S. states.  So far in 2019, Mandarich has filed more than 2,500 debt collection lawsuits on behalf of debt buyers in New York City alone.

14.     Defendant Darleen V. Karaszewski ("Ms. Karaszewski") is a partner at Mandarich. Ms. Karaszewski, upon information and belief, lives in Erie County, New York.

15.     Ms. Karaszewski files consumer collection lawsuits on behalf of putative creditors, and collects on putative consumer judgments by issuing information subpoenas, bank restraints, and garnishments, and sending collection letters.

16.     Ms. Karaszewski was personally involved in the abusive and deceptive conduct towards Ms. Fritz, signing the collection letter alleging to substantiate the vacated judgment and attempting to deceive Ms. Fritz into signing up for a payment plan.

17.     Ms. Karaszewski is thus a "debt collector" as defined by the FDCPA.

18.     Since Ms. Karaszewski's actions were on behalf of Mandarich, the term "Mandarich" applies jointly and severally the Defendants Ms. Karaszewski and Mandarich Law Group.

19.     Defendant Nations Recovery Center, Inc. ("NRC") is a debt collection agency organized under the laws of the State of Georgia. This suit arises out of its business in New York State.

20.     NRC is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), because its principal purpose is the collection of debt and it regularly collects or attempts to collect, directly or indirectly, debts asserted to be owed another. In a written communication to Ms. Fritz dated October 22, 2018, NRC identifies itself as a debt collector and provides its New York City Department of Consumer Affairs debt collector license number.

21.     NRC states on its website, natrecovery.com, that it has collected on consumer retail credit card debts like the putative debt in this case "for over 15 years," that they are "licensed in all 50 states" collect such debt, and its "Atlanta based facility employs over 150 collections professions who operate nationwide."

22.     Defendants NRC and Mandarich, by their own actions and on behalf of the LVNV Defendants, have unlawfully attempted to collect a currently non-existent debt arising from a vacated judgment against Ms. Fritz from Kings County Civil Court.

## **STATEMENT OF FACTS**

**a.  The Vacated Judgment -- *LVNV Funding, LLC v. Giselle Fritz*, CV-53571-07**

23.     On May 1, 2007, Defendant LVNV sued Ms. Fritz in Kings County Civil Court as

alleged assignee of a Sears credit card, claiming $4,228.96. **Exhibit A** (Summons and Complaint in *LVNV Funding, LLC v. Giselle Fritz*, Index No. CV-53571-07).[1]

24.    In support of its claims, LVNV-as-plaintiff submitted an Affidavit of Merit dated May 1, 2007, wherein the affiant asserts that LVNV purchased the debt, an account ending in 7446, from Citibank after it was in default. **Exhibit B** (Affidavit of Merit).

25.    In an Affidavit of Service, LVNV's process server attested that, after confirming her correct residence with her neighbor "'John' Trent," he served Ms. Fritz by affixing the Summons and Complaint on her apartment door after three unsuccessful attempts to serve her, and then mailing same. **Exhibit C** (Affidavit of Service)

26.    Ms. Fritz did not receive notice of the lawsuit in any manner while it was pending and consequently did not appear.

27.    On or around July 16, 2007, a default judgment was entered in the amount of $5,255.95, including interest, costs, and fees. **Exhibit D** (Judgment).

28.    Ms. Fritz did not find out about the Judgment until 2011, when her attorneys, CAMBA Legal Services, Inc., discovered it during a routine search of E-Courts, New York State's online court database, while representing Ms. Fritz in another case.

29.    On July 27, 2011, Ms. Fritz, through counsel, moved by Order to Show Cause ("OSC") to vacate the Judgment. **Exhibit E** (OSC).

30.    In her affidavit in support of the OSC, Ms. Fritz attested that she was not served and that the Affidavit of Service could not have been truthful. In the eleven years that she had been living in her building, she never had a neighbor, doorman, or super with the last name

---

[1] All Exhibits attached to this complaint are incorporated by reference in their entirety.

"Trent." Her doorman would have been on duty during the first alleged service attempt, and therefore would have accepted service and prevented the process server from directly approaching Ms. Fritz' door. *See* **Exhibit E**, Affidavit of Defendant, ¶¶ 4-7.

31.     On August 2, 2011, at the return date for the OSC, LVNV-as-plaintiff stipulated to vacate the default judgment. **Exhibit F** (LVNV Stipulation to Vacate).

32.     About 4 weeks later, on August 30, 2011, the parties agreed to discontinue the case and executed a stipulation to that effect.

33.     On October 25, 2011, the Stipulation of Discontinuance was filed in Kings County Civil Court. **Exhibit G** (Stipulation of Discontinuance).

34.     Ms. Fritz had thought this matter was behind her. Unfortunately, the debt collection attempts we just beginning.

**b.  Defendants' Collection Attempts on the Vacated Judgment**

35.     In 2014, three years after the judgment was vacated, Defendant NRC, on behalf of the LVNV Defendants, sent a debt collection letter to Ms. Fritz that demanded payment on the vacated judgment, referencing an account ending in 7446.

36.     On information and belief, on or about late August or September 2014, Ms. Fritz sent a letter to NRC requesting that NRC verify the debt. *See* **Exhibit H** (2014 Dispute Letter).

37.     Upon information and belief, NRC never responded to Ms. Fritz' request for verification.

38.     Instead, NRC, on behalf of the LVNV Defendants, continued to seek to collect the vacated judgment. The FDCPA, 15 U.S.C. § 1692g(b) specifically required NRC to cease collection until it provided Ms. Fritz a written verification of the debt or copy of the putative

judgment.  Had NRC, in a meaningful way, complied with its verification responsibilities it presumably would have discovered the judgment was vacated, and ended collection activities.

39.     On or around October 22, 2018, NRC, on behalf of the LVNV Defendants, mailed yet another debt collection letter to Ms. Fritz demanding payment on the Judgment. **Exhibit I** (October 22, 2018 NRC Letter).

40.     The October 22, 2018 NRC Letter identifies the current creditor as LVNV Funding LLC, the original creditor as Citibank USA, N.A., an account number ending in 7446, and a date on which the balance became due of July 16, 2007. *Id*.  This is the date of the (fraudulently obtained) Judgment.  The letter represents the total amount due "as of Judgment" of $5,255.95, an amount of interest accrued "since Judgment" of "5326.5000" [sic].  The "current balance" due was represented as $10,588.93, more than double the amount sought in the collection lawsuit.  The letter further represents that "interest continues to accrue on this judgment."

41.     The letter states, when a when a debt collector obtains a judgment against a consumer, that "state and federal laws prevent the following types of income from being taken to pay the debt…"  The list includes various retirement, disability, student loan/grant, and public benefit income.  Of course the least sophisticated consumer could easily believe that "income" not falling within the listed exemption – such as her income -- could be "taken" to "pay the debt," that is, the vacated judgment.

42.     The two NRC Letters were not the end of LVNV Defendants' attempts to collect on the vacated Judgment.

43.     On or around January 15, 2019, Defendant Mandarich Law Group, a debt

collection law firm, also sent a letter on behalf of the LVNV Defendants demanding payment on the non-existent Judgment to Ms. Fritz. **Exhibit J** (January 15, 2019 Mandarich Letter).

44.     The January 15, 2019 Mandarich Letter identifies the current creditor as LVNV Funding LLC, the original creditor as Citibank USA, N.A., an account number ending in 7446, a current balance of $10,697.78, a default date of July 31, 2004, and a charge off date of March 2, 2005. *See* **Exhibit J**.

45.     On February 15, 2019, Ms. Fritz sent separate letters, each dated January 25, 2019, requesting that both NRC and Mandarich verify the debt they sought to collect (the "February 15, 2019 NRC Dispute Letter" and the "February 15, 2019 Mandarich Dispute Letter").  Each letter informed the defendant that the judgment was vacated and had a copy of the stipulation of vacatur enclosed.  **Exhibit K** (February 15, 2019 NRC Dispute Letter) and **Exhibit L** (February 15, 2019 Mandarich Dispute Letter).

46.     The February 15th, 2019 NRC Dispute Letter and the February 15, 2019 Mandarich Dispute Letter each requested that the debt collector identify the owner, servicer, or debt collector for the debt for the last twelve months; identify who forwarded the account for collection; and state whether the entity that forwarded the account disclosed that the judgment was vacated.

47.     Just like with Ms. Fritz's dispute and verification letter in 2014, NRC did not respond to the February 15th, 2019 dispute and verification request.

48.     Mandarich responded to the February 15, 2019 Mandarich Dispute Letter by letter dated June 4, 2019. **Exhibit M** (June 4, 2019 Mandarich Reply).

49.     The June 4, 2019 Mandarich Reply identifies the current creditor as LVNV

Funding LLC, the original creditor as Citibank USA, N.A., and an account number ending in 7446. Mandarich enclosed the (vacated) Judgment and, even though it had just been sent the stipulation vacating this judgment, told Ms. Fritz that this document substantiates the debt.

50.     In the same letter, Mandarich followed up this misrepresentation of the legal status of the putative debt with a collection attempt, letting Ms. Fritz know she can call to settle or set up a payment plan. The Mandarich letter did not state which entity forwarded the account and whether that entity disclosed that the judgment was vacated.

51.     Despite ample notice that the Judgment was vacated, on or around August 23, 2019, Mandarich mailed *yet another* collection letter to Ms. Fritz' attorneys at CAMBA Legal Services. **Exhibit N** (August 23, 2019 Mandarich Letter).

52.     The August 23, 2019 Mandarich Letter states:

> We are in receipt of your communication, which claims that our response to your request for validation of debt is unsatisfactory. However, our validation complied with all applicable regulations. We have complied with Section 809(b) of the Fair Debt Collection Practices Act as we have confirmed in writing that the debt being demanded is what the creditor is claiming is owed.

53.     It is unclear which "communication" Mandarich was responding to in its August 23 letter. Although Mandarich's June 4, 2019 Reply to Ms. Fritz's request to validate the debt was indeed unsatisfactory, neither Ms. Fritz nor CAMBA Legal Services sent any follow-up communication to Mandarich until the filing of this complaint.

54.     The August 23, 2019 Mandarich Letter also contains a collection attempt, directing Ms. Fritz to contact Collection Supervisor John Licata to "come to an agreeable arrangement" on the account.

55.     The October 22, 2018 NRC Letter, the January 15, 2019 Mandarich Letter, the

June 4, 2019 Mandarich Reply, and the August 23, 2019 Mandarich Letter all misrepresent the character and legal status of the purported debt in violation of the FDCPA by demanding payment on a judgment that was vacated in a case that was dismissed about seven years before the letters were sent.

56. The misrepresentations of the LVNV Defendants, NRC, and Mandarich that they were collecting on an existing judgment, when that judgment was in fact vacated, falsely represents to the least sophisticated consumer that enforcement mechanisms, including wage garnishment and bank account restraint and seizure, were available to the debt collectors.

57. The LVNV Defendants, NRC, and Mandarich also mischaracterized the amount of the debt and attempted to collect on amounts not authorized by law by claiming current balances that include 9% post-judgment interest and court costs and fees. Because there was no judgment at the time of the collection attempts, LVNV and its agents were entitled to collect neither on the judgment itself, nor the non-adjudicated court costs, nor on the post-judgment interest that more than doubled the amount demanded.

58. Further, the FDCPA prohibits the false representation or implication that a communication is from an attorney when it is not. 15 U.S.C. § 1692e(3). When a written communication is issued under a law firm letterhead or in the name of an attorney, the attorney must make an individualized professional determinations that the allegations in the written communication are correct in order for that written communication to be considered to be coming "from an attorney" pursuant to 1692e(3).

59. Mandarich, by its own actions and as agent of the LVNV Defendants, falsely represented or implied to the least sophisticated consumer that that it had performed meaningful attorney review such that they came to a professional judgment that their allegations in their

collection letters were true. The most important of those representations, of course, is that LVNV had a valid, enforceable judgment against Ms. Fritz. The January 15, 2019 Mandarich Letter, the June 4, 2019 Mandarich Reply, and the August 23, 2019 Mandarich Letter are all written on letterhead that contains the logo for "Mandarich Law Group, LLP Attorneys at Law," and lists the 22 states in which Mandarich attorneys are admitted to practice law. The June 4, 2019 Mandarich Reply names two lawyers in the signature line – Darleen V. Karaszewski, Esq., and Scott J. Whitbeck, Esq. – and appears to be signed by Defendant Ms. Karaszewski. And the August 23, 2019 Mandarich Letter sets forth the legal opinion that its actions comply with the FDCPA. Based on the letterhead, attorney signatures, and legal opinions set forth in the letters, the least sophisticated consumer could easily believe that the communications come from an attorney authorized to take legal action to enforce a valid judgment.

60. Neither Ms. Karaszewski nor any other attorney at Mandarich performed a meaningful review of Ms. Fritz's account. If an attorney had done so, they would have easily discovered that the Judgment was vacated. Even the most ministerial acts of checking the court's records (**Exhibit O** [Civil Court Case Summary]) or typing in the name of the consumer into Court's free eCourts website[2] (**Exhibit P** [eCourts printout]) would have disclosed the judgment was vacated. Mandarich obviously knows of the ease of getting this information because, as previously noted, it has filed more than 2,500 debt collection lawsuits in New York City alone in the first 9 months of 2019.

### c. Defendants' Cross-Liability

61. As a preliminary matter, the FDCPA is a strict liability statute so the knowledge or intent of the debt collector is immaterial to FDCPA liability. Therefore, all defendants are

---

[2] http://iapps.courts.state.ny.us/webcivil/ecourtsMain

liable for collecting on a non-existent judgment, either directly or through their agents. However, evidence of knowledge, both actual and charged, abounds.

62.    The LVNV Defendants actually knew, should have known, or were charged with knowing when the default judgment was vacated.  Rubin & Rothman, LLC, ("R&R") the attorneys of record for the LVNV Defendants, were timely and properly served the OSC and the order vacating the default judgment.  On information and belief, R&R informed its client, the LVNV Defendants, of the same.  Even if not, the LVNV Defendants are charged with the knowledge of their agents, regardless if that knowledge is not communicated to the principle.

63.    If the LVNV Defendants represented to Mandarich or NRC that there was a valid enforceable judgment against Ms. Fritz, the LVNV Defendants would be liable for the misrepresentation knowing that the account was being forwarded for further collections.

64.    A standard term in collection agreements is that the principle expressly disclaims the accuracy of the account information sent to the agent for collections, and puts the burden on the agent to independently verify the accuracy of that information. *See, e.g.,* "The Structure and Practices of the Debt Buying Industry," Federal Trade Commission (January 2013), pg. 25-28.[3] On information and belief this standard disclaimer term is in the agreements between the LVNV Defendants and Mandarich and NRC.

65.    If NRC returned Ms. Fritz's account to the LVNV Defendants without disclosing that the judgment had been vacated and the case dismissed after being placed on notice of the same by Ms. Fritz, first in 2014, and again in 2019, then they would be liable for that misrepresentation knowing that the account was being returned for further collections.

---

[3] Available at https://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf

66.     It appears none of the Defendants took even the most ministerial of steps to determine whether the judgment was still valid.  Had any of the defendants done so, they would have seen the judgment was vacated and the case dismissed. **Exhibit O** (Civil Court Case Summary), **Exhibit P** (eCourts Printout).

67.     The LVNV Defendants and NRC were on additional notice that the Judgment was vacated because of Ms. Fritz's 2014 dispute and verification letter.

68.     Mandarich, the LVNV Defendants, and NRC were also on additional notice that the Judgment was vacated because of Ms. Fritz's February 15, 2019 Mandarich Dispute Letter and the February 15, 2019 NRC Dispute Letter.

### d.  LVNV Defendants' Pattern and Practice of Collecting on Vacated Judgments

69.     Ms. Fritz is the victim of what has become a frighteningly common debt collection practice—attempting to collect on a consumer debt judgment when that judgment has been vacated and the case dismissed.

70.     This practice includes continuing to collect on judgments (including sewer service judgments) after those judgments have been vacated, and blindly forwarding those putative judgments *en masse* for further collection, while taking no steps to verify the validity of the underlying judgments or the accuracy of the information upon which the judgments are based.

71.     The LVNV Defendants' conduct has a broad impact on consumers at large.

72.     Given allegations of widespread sewer service in New York,[4] orders to show

---

[4] *Sykes v. Mel Harris & Associates, LLC*, 285 F.R.D. 279, 282-83 (S.D.N.Y. 2012) ("*Sykes II*") aff'd sub nom. *Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70 (2d Cir. 2015) ("*Sykes III*")

cause to vacate those judgments are common and commonly known by debt collectors. The LVNV Defendants specifically know this because they have repeatedly been sued for collecting on sewer service default judgments that were in fact vacated.

73.     The LVNV Defendants' conduct impacts the hundreds of consumers in the state of New York who have been victims of "sewer service" and have had those judgments vacated, but none-the-less have and have had vacated judgments executed upon.

74.     The LVNV Defendants have been sued in *seven* other FDCPA lawsuits in the last five years just by undersigned co-counsel The Law Office of Ahmad Keshavarz for collecting on vacated sewer service judgments. *See Oglesby v. LVNV Funding, et al.,* 1:19-cv-01834-AMD-CLP (EDNY); *Phillips v. LVNV Funding, et* al, 1:15-cv-07088 (SDNY); *Francis v. LVNV Funding LLC et al*, 1:15-cv-03757-MKB-JO; *Rosas v. Arrow Financial Services, LLC et al*, 1:14-cv-06462-MKB-JO (EDNY); *O'Neill v. LVNV Funding, LLC et al*, 1:14-cv-07636-ER-DCF (SDNY); *Martinez v. LVNV Funding LLC et al*, 1:14-cv-00677-RRM-MDG (EDNY); and *Gomez v. Inovision-Medclr Portfolio Group, LLC et a*l, 1:13-cv-07395-RWS (SDNY).

75.     The evidence and stipulations in those six cases support a finding that LVNV

---

In this case, four plaintiffs allege that a debt-buying company, a law firm, a process service company, and others engaged in a scheme to fraudulently obtain default judgments against them and more than 100,000 other consumers in state court. Defendants allegedly acted in concert to defraud these consumers in violation of [the FDCPA, RICO, GBL 348, and Judiciary Law 487]. Plaintiffs… move for class certification.

The motion is granted…. The record also shows that on hundreds of occasions the defendant process servers purported to serve process at two or more locations at the same time… [D]efendants' unitary course of conduct purportedly to obtain default judgments in a fraudulent manner presents common questions of law and fact that can be resolved most efficiently on a class-wide basis.

*See also Velocity Investments, LLC v. McCaffrey*, 31 Misc. 3d 308, 311-12, 921 N.Y.S.2d 799, 801-02 (Dist. Ct. 2011)(reciting terms of *Matter of Pfau v. Forster & Garbus, et al.* stipulation to resolve allegations the "many if not most" of the 73,000 affidavits of service were false).

Defendants' conduct is broadly consumer-oriented and has a scope beyond the conduct alleged in this complaint as to Ms. Fritz, and, moreover, is being done willfully and wantonly.

76.     On December 1, 2015 the Court in *Rosas v. Arrow Financial Services, LLC et al*, 1:14-cv-06462-AMD-JO (EDNY) "so ordered" a stipulation where the LVNV Defendants stipulated *inter alia* that they attempt to collect on vacated judgments, that they do so systematically, and they do so willfully and/or knowingly.

77.     On July 30, 2015, in the aforementioned *Rosas* case, the LVNV Defendants produced an email dated September 24, 2012, with TrakAmerica (a forwarder of putative debts) documenting that the LVNV Defendants were collecting on 291 putative judgment accounts when in fact there were no valid existing judgments.

78.     On July 27, 2015, in the *O'Neill* case (wage garnishment on a vacated judgment), the LVNV Defendants produced an email dated November 4, 2014, from their Litigation Department stating that they had just received another lawsuit with similar allegations of collection of a vacated judgment.

79.     In the *Martinez* case, the Court found the alleged misconduct of the LVNV Defendants, if true, would not only state a claim under GBL 349 but would be deceptive as a matter of law.[5]

**e.  Mandarich's and NRC's Pattern and Practice of Collecting on Vacated Judgments**

---

[5] "Simply put, Defendants' alleged practice of attempting to collect on judgments after those judgments had been vacated is deceptive on its face.  The collection notices purport to collect a valid legal judgment when, in fact, the judgment had already been vacated.  Any argument that such conduct is not deceptive as a matter of law is baseless.  A reasonable consumer reading such a notice would likely be misled into believing that a valid court judgment existed and this belief could coerce a reasonable consumer into paying the judgment under the mistaken belief that they could be subject to even harsher penalties for failing to pay a valid legal judgment." *Martinez v. LVNV Funding, LLC*, No. 14CV00677RRMST, 2016 WL 5719718, at *3 (E.D.N.Y. Sept. 30, 2016)

80.     Defendants Mandarich and NRC each have a number of pending or settled federal lawsuits nationwide for conduct similar to that alleged herein, including attempting collection on vacated judgments, amounts already paid pursuant to settlements, and on judgments obtained against other individuals.  Based on the complaints in those matters, Plaintiff reasonably believes that evidence produced in discovery will show that Mandarich and NRC willfully or knowingly engage in a pattern and practice of collecting on putative debts that arise from vacated judgments or that have otherwise been settled.

81.     Mandarich is the defendant in two pending lawsuits alleging conduct that is similar to the allegations herein:  *Stephanie Massey v. CACH LLC, Resurgent Capital Services, LP, and Mandarich Law Group, LLP*, No. 1:19-cv-2611 (N.D. Ga.) (collection attempts on a default judgment after the judgment amount was settled in writing and the consumer released from liability); and *Vera Clowers v. Mandarich Law Group, LLP, CACH, LLC, LVNV Funding, LLC, and Resurgent Capital Services, LP*, 5:19-cv-179 (M.D.Ga.) (collection attempts on a debt that was settled in writing during state court litigation).

82.     Mandarich has, upon information and belief, reached at least six settlements in the last six years in cases alleging conduct that is similar to the conduct herein:  *Wyrick v. Square Two Fin. Corp., CACH, LLC, and Mandarich Law Group, LLP*, 8:15-cv-1308 (C.D.Cal.) (wage garnishment to enforce a judgment that was vacated, and failure to terminate the garnishment despite multiple calls from Plaintiff's counsel); *Garcia v. CACH, LLC, Law Office of David Sean Dufek, David Sean Dufek, and individual, and Mandarich Law Group, LLP*, 8:15-cv-40 (C.D.Cal.) (filing an Abstract of Judgment with the county recorder after the judgment had been vacated and the case discontinued with prejudice by stipulation); *Correa v. Mandarich Law Group LLP*, 1:16-cv-10097 (N.D.Ill.) (service of summonses in two debt collection lawsuits that

17

had already been dismissed); *Estrada v. CACH, LLC and Mandarich Law Group, LLP*, 1:17-cv-7499 (N.D.Ill.) (commenced lawsuit and obtained default judgment against Plaintiff for portions of a debt already forgiven pursuant to a written settlement agreement, and, after the default judgment was vacated pursuant to Plaintiff's motion and the case later dismissed for failure to prosecute, continued attempts to collect the forgiven balance); *Galvan v. CACH, LLC, and Mandarich Law Group, LLP*, 2:18-cv-902 (E.D.Cal.) (re-initiated wage garnishment five years after terminating garnishment of Plaintiff's wages and returning all funds based on her claim of identity theft substantiated by a criminal conviction); *Rhodes v. CACH, LLC, Mandarich Law Group, LLP, et. al.*, 2:13-cv-2508 (E.D.Cal) (collection attempts on debt that had been paid in full per a settlement agreement, even after being notified of the settlement).

83.     Upon information and belief, Defendants NRC and LVNV settled a lawsuit where NRC illegally attempted to collect on a vacated Judgment. *See Mirshafiei v. LVNV Funding, LLC, and Nations Recovery Center, Inc.*, 8:16-cv-1415 (C.D.Cal.).   There is a pending suit against NRC for allegedly harassing Plaintiff, despite repeated disputes, to collect on a judgment from a state where Plaintiff did not live, and that was likely against Plaintiff's father, who goes by the same name. *See Marzano v. Nations Recovery Center, Inc.*, 1:19-cv-2660 (N.D.Ill.)

84. The scale of Mandarich's and NRC's operations in New York broadly targets consumers, seeking payments toward debts that are not owed, and causing emotional distress and other harms. Thus the conduct of Defendants Mandarich and NRC has a broad impact on consumers at large.

### f.  Damages

85.     Ms. Fritz has suffered significant emotional distress, embarrassment, and humiliation as a result of the Defendants' multiple unlawful attempts to collect on a judgment

that was vacated years ago, and that Ms. Fritz thought was resolved.

86.     Ms. Fritz has been hounded for years by debt collectors who sued her for debts that were inflated or that she did not owe, and obtained judgments more than once through "sewer service."

87.     Ms. Fritz was previously a named plaintiff in an FDCPA class action lawsuit against LVNV, Resurgent, and others based on Resurgent's lawsuit against Ms. Fritz for $2,034.00 allegedly owed on a Levitz Furniture Store card that, according to Ms. Fritz' recollection, had only a $300 balance (*Resurgent Capital Services, LLC v. Giselle Carter*, Index No. CV-92790-10).

88.     The class action, *Giselle Fritz f/k/a Giselle Carter, et. al., v. Resurgent Capital Services, LP, et. al.*, No. 1:11-cv-3300-FB-VVP (E.D.N.Y) settled for approximately $280,000, with final judgment entered on September 12, 2016.   Additionally, relief also included the deletion of all credit report tradelines at issue, including for the putative debt sought against Ms. Fritz.

89.     The extensive and hard-won relief by Ms. Fritz made it feel like she had gotten past this difficult time in her life and that she would be able to move forward.

90.     Unfortunately, Defendants not only have continued to engage in the same illegal debt collection, but have again harmed Ms. Fritz with it, resurrecting all the previous anxieties and distress experienced years ago.

91.     The collection letters from the LVNV Defendants, through their agents NRC and Mandarich, arrived after Ms. Fritz had already endured the stress of vacating several default judgments, including the one giving rise to Defendants' collection activities.   Even Ms. Fritz's

dispute letters with the LVNV Stipulation to Vacate enclosed were not enough to end the collection attempts.

92.    Because of Defendants' actions, Ms. Fritz has no sense of security that she will ever be free from the harassment and possible financial consequences of unlawful debt collection.

93.    Ms. Fritz at first though that the 2014 Letter to NRC would resolve the issue, so it was especially distressing when NRC sent its second letter in 2018 and then Mandarich sent its letters.  It seems to her like they will never stop.

94.    Coming home to the anxiety-inducing letters from Mandarich and NRC after long days working as a social worker for the City of New York (an incredibly stressful job in any context), Ms. Fritz has frequently been unable to sleep because she is worried about possible unlawful wage garnishment—which has happened to her once before—or a restraint on her bank account.  She thought she might have to go back to court and start the whole process all over again.

95.    She feels like she is in a nightmare she cannot get out of, with Mandarich even now refusing to discontinue its unlawful attempt to collect on the vacated judgment. She is always waiting for another letter because it just seems to be how Defendants operate, that they conduct themselves as if by their own laws.

96.    Ms. Fritz will often do housework late into the night while worrying about the collection letters, and has had many 2:00 am phone calls with her 85-year-old mother to talk through her anxieties.

**CLAIMS**

## FIRST COUNT

### Violations of the Fair Debt Collection Practices Act (as to all Defendants)

97.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

98.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

99.     Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

100.     The obligation alleged to be owed by Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative store credit card debt was incurred primarily for family, personal or household purposes. The LVNV Defendants themselves state in the Collection Lawsuit that

the putative obligation arose from an alleged "consumer credit transaction." Further, the debts

LVNV Funding, LLC purchases are charged off consumer credit obligations.

101. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff

was alleged to owe a "debt" as defined by 15 U.S.C. § 1692a(5).

102. For the reasons set forth in the "Parties" section of this Complaint, each

Defendant is a "debt collector" as defined in 15 U.S.C. § 1692a(6).

103. Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e,

1692f, and 1692g. By way of example and not limitation, Defendants violated the FDCPA by

taking the following actions in an attempt to collect a debt or in connection with an attempt to

collect a debt: using false, deceptive or misleading representations or means; misrepresenting the

character, amount, or legal status of the debt; misrepresenting the compensation which may be

lawfully received; falsely representing or implying that a communication is from an attorney;

representing or implying that nonpayment of any debt will result in the seizure, garnishment,

attachment, or sale of any property or wages of any person unless such action is lawful and the

debt collector or creditor intends to take such action; threatening to take and actually taking an

action prohibited by law, or threatening to take an act not intended to be taken; communicating

or threatening to communicate to any person credit information which is known or which should

be known to be false, including the failure to communicate that a disputed debt is disputed; using

any false representations or deceptive means; using unfair or unconscionable means; and

collecting or seeking to collect any amount (including any interest, fee, charge, or expense

incidental to the principal obligation) unless such amount is expressly authorized by the

agreement creating the debt or permitted by law; threatening to take any non-judicial action to

effect dispossession or disablement of property if (A) there is no present right to possession of

the property claimed as collateral through an enforceable security interest; or (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement; and failing to cease collection attempts after a timely written dispute without first providing verification information pursuant to 1692g.

104.     As a direct and proximate result of Defendants' violations, Plaintiff has suffered damages, including, *inter alia*, significant emotional distress, embarrassment, and humiliation.

**SECOND COUNT**

**Deceptive Acts or Practices in Violation of New York General Business Law § 349 (as to all Defendants)**

105.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

106.     New York General Business Law § 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state."  An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. § 349(h).

107.     As enumerated above, Defendants violated N.Y. Gen. Bus. § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses. These acts were done by Defendants systematically and, as such, have had a broad impact on consumers at large.

108.     Defendants committed the above described acts willfully and/or knowingly.

109.     Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury.

110.     As a direct and proximate result of those violations of N.Y. Gen. Bus. § 349 *et seq,* Plaintiff has suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and damages, together with costs and attorney's fees

111.     Defendants falsely, deceptively, and misleadingly represented to Ms. Fritz that they had the right to take any legal or collection actions.

112.     Defendant Mandarich sought to collect on a vacated judgment without performing any meaningful attorney review.  Yet they falsely, deceptively, and misleadingly represented implicitly that they had, in fact, conducted such a review, by sending Ms. Fritz a letter on attorney letterhead, signed by an attorney, with a copy of the judgment.

113.     Defendants LVNV, NRC, and Mandarich have used similar tactics to attempt to collect hundreds of thousands of debts, and each has been the subject of multiple FDCPA lawsuits nationwide.  Accordingly, their violations affect consumers at large.

114.     The Defendants' deceptive conduct towards Ms. Fritz is the type of conduct that has a broad impact on consumers at large.

115.     Defendants knew or should have known—based on publically available Internet records, information in the court file, and Ms. Fritz's written dispute—that they were attempting to collect on a judgment that had been vacated and an underlying lawsuit that had been discontinued.

116.     That the relevant steps may be taken in a matter of minutes shows a high degree of moral culpability.  Defendants' violations were willful and knowing, or, at minimum, evidence a conscious and reckless disregard for basic fairness and for the law. Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

## JURY DEMAND

117.  Please take notice that Plaintiff demands a trial by jury.


## PRAYER FOR RELIEF

118.  Wherefore, Plaintiff requests the following relief:

a.  A declaration that Defendants have committed the violations of law alleged in this action;

b.  An order enjoining and directing Defendants to cease violating the FDCPA, 15 U.S.C. § 1692, *et sec.*, and New York G.B.L. § 349;

c.  Actual damages

d.  , treble, and punitive damages;

e.  Statutory damages under 15 U.S.C. § 1692k and G.B.L. § 349;

f.  An order awarding disbursements, costs, and attorney fees under 15 U.S.C. § 1692k and G.B.L. § 349;

g.  Pre-judgment and post-judgment interest as permitted by law;

h.  All other and further relief that the Court deems just and proper.

Dated: September 13, 2019

Respectfully Submitted,

/s/

_____

Marisa-Lyn Menna, Esq., of Counsel
CAMBA Legal Services, Inc.
Elizabeth Miller, Esq., General Counsel
885 Flatbush Avenue, Suite 202
Brooklyn, NY 11226
Tel: 718-940-6311 x 79222

Fax: 718-462-5537
Email: MarisaM@camba.org


                    /s/
_____

Ahmad Keshavarz,
The Law Office of Ahmad Keshavarz
16 Court Street, 26th Floor
Brooklyn, NY 11241
Tel: (718) 522-7900
Fax: (877) 496-7809
Email:
ahmad@NewYorkConsumerAttorney.com