# AHMAD KESHAVARZ
*Attorney at Law*

---

16 COURT ST., 26TH FLOOR
BROOKLYN, NY 11241-1026

WWW.NEWYORKCONSUMERATTORNEY.COM
E-mail: ahmad@NewYorkConsumerAttorney.com

Telephone: (718) 522-7900
Fax: (877) 496-7900

March 2, 2020

<u>VIA ECF</u>
Magistrate Judge Peggy Kuo
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re: **Letter motion to compel documents and interrogatories from Defendants Mandarich Law Group, LLP and Darleen V. Karaszewski.**
> *Fritz v. LVNV Funding, LLC, et al.,* **No. 1:19-cv-05255-ENV-PK**

Dear Judge Kuo:

The undersigned, along with co-counsel at CAMBA Legal Services, represent Plaintiff Giselle Fritz in this suit against Defendants for their violations of the Fair Debt Collection Practices Act, and for related claims.

## BACKGROUND

Mandarich Law Group, LLP and Darleen V. Karaszewski (collectively "Mandarich") are a debt collection firm with, like its co-defendants LVNV and Resurgent, an extensive history of attempting to collect on non-existent judgments, having been sued over such conduct several times from 2015 to the present.[1]

Plaintiff Giselle Fritz's story is both demonstrative of the harms inflicted on consumers generally by Mandarich as well as particularly harrowing. LVNV entered a default judgment against Ms. Fritz on July 16, 2007. Ms. Fritz had not received notice of the lawsuit in any manner and consequently did not appear. However, when her attorneys, CAMBA Legal Services, Inc., discovered the judgment in 2011 during a routine search of eCourts (New York State's online court database), she immediately moved by Order to Show Cause on July 27, 2011 to vacate the Judgment, noting that the affidavit of service could not be accurate because her doorman would have been on duty and accepted service as well as prevented the process server from directly approaching Ms. Fritz's door. Faced with this, LVNV stipulated to vacate the default judgment and on August 30, 2011, stipulated to discontinue the case. It seemed to Ms. Fritz that the matter was finished – but then, three years later, Defendant Nations Recovery

---

[1] *Wyrick v. Square Two Fin. Corp., CACH, LLC, and Mandarich Law Group, LLP*, 8:15-cv-1308 (C.D.Cal.); *Garcia v. CACH, LLC, Law Office of David Sean Dufek, David Sean Dufek, and individual, and Mandarich Law Group, LLP*, 8:15-cv-40 (C.D.Cal.); *Correa v. Mandarich Law Group LLP*, 1:16-cv-10097 (N.D.Ill.); *Estrada v. CACH, LLC and Mandarich Law Group, LLP*, 1:17-cv-7499 (N.D.Ill.); *Galvan v. CACH, LLC, and Mandarich Law Group, LLP*, 2:18-cv-902 (E.D.Cal.); *Rhodes v. CACH, LLC, Mandarich Law Group, LLP, et. al.*, 2:13-cv-2508 (E.D.Cal); *Stephanie Massey v. CACH LLC, Resurgent Capital Services, LP, and Mandarich Law Group, LLP*, No. 1:19-cv-2611 (N.D. Ga.); and *Vera Clowers v. Mandarich Law Group, LLP, CACH, LLC, LVNV Funding, LLC, and Resurgent Capital Services, LP*, 5:19-cv-179 (M.D.Ga.).

Center, Inc.[2] on behalf of LVNV attempted to collect on the non-existent judgment. Ms. Fritz responded by requesting that NRC verify the debt, but received a response from neither NRC nor LVNV. Instead, NRC mailed another letter seeking to collect on the non-existent judgment on October 22, 2018. To make matters worse, on or around January 15, 2019, Defendant Mandarich Law Group on behalf of LVNV sent a debt collection letter also seeking to collect on the non-existent judgment. On February 15, 2019, Ms. Fritz sent two separate letters to NRC and Mandarich respectively giving notice that the judgment was vacated and enclosing a copy of the stipulation showing so. Rather than ceasing collection, Mandarich on behalf of LVNV sent two more letters attempting to collect on the non-existent judgment on June 4, 2019, and August 23, 2019, even attaching the (vacated) judgment to "substantiate" the debt. Mandarich's conduct in passing off a vacated-judgment as enforceable, even after the stipulation vacating the judgment had been sent to them, is contumacious and precisely the kind of willfully deceptive debt collection conduct that both the FDCPA and GBL § 349 are meant to prohibit.

Ms. Fritz suffered significant emotional distress, embarrassment, and humiliation as a result of Mandarich's repeated unlawful attempts to collect on the non-existent judgment. Ms. Fritz has been hounded for years by debt collectors who sued her for debts that were inflated or that she did not owe, and obtained judgments against her more than once through "sewer service." Just when she thought she had gotten past this difficult time in her life, Mandarich repeatedly tried to collect on a non-existent judgment, and continued to do so even after she sent letters disputing the debt. Because of Mandarich's conduct, Ms. Fritz has no sense of security that she will ever be free from the harassment and possible financial consequences of unlawful debt collection. She feels like she is in a nightmare she cannot get out of; she is always waiting for another letter, knowing that debt collectors she has dealt with, including Mandarich, operate as if by their own laws.

**ARGUMENT**

On September 13, 2019, Plaintiff filed her Original Complaint and Jury Demand. LVNV filed their answer on November 15, 2019. Of particular import to Defendants was entering a protective order, so the parties filed a joint proposed protective order on December 4, 2019 [DE 34] thatYour Honor so-ordered on December 5, 2019 [DE 35-1]. On December 10, 2019, Plaintiff propounded her first set of discovery requests. *See* **Exhibit A** (First Set of Discovery). After conferring extensively (*see* Certificate of Conference below), on February 15, 2020, Defendant Mandarich stated that it will not be producing pattern and practice information sought by Plaintiff. On February 18, 2020, Mandarich produced a privilege log identifying [documents] as withheld based on attorney-client privilege – but from the descriptions provided, there does not appear to be a proper basis for withholding the documents. Plaintiff is therefore moving to compel.

> 1. **Interrogatories #14-15 and RFPs #23-24 : Mandarich's pattern and practice of collecting on non-existent judgments is relevant to Plaintiff's allegation that their repeated attempts to collect on Ms. Fritz's debt were consumer-oriented and thus a violation of GBL § 349.**

Plaintiff's Interrogatories #14-15 seek pattern and practice information as to how often Mandarich has collected on a non-existent judgment and how many times it has been sued over

---

[2] Defendant NRC has defaulted in this action. *See* DE 26.

attempting to collect on a non-existent judgment. Mandarich objects that the information sought is irrelevant to any party's claim or defense and is not proportional. To the contrary, for Plaintiff to establish her GBL § 349 claim, she must show that Mandarich's attempts to collect on a non-existent judgment were "consumer-oriented" conduct. One way of establishing that conduct is "consumer-oriented" is through evidence of pattern and practice. *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 ERK, 2012 WL 661456, at *14 (E.D.N.Y. Feb. 28, 2012), *report and recommendation adopted,* No. 10 CV 3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) ("a policy and practice of intentionally filing time-barred claims"). In fact, such allegations are contained in Plaintiff's Original Complaint (¶¶ 80-84). And Plaintiff has specifically propounded these requests as interrogatories and limited them to 2018 to the present in order to limit burden; burden can be a basis for narrowing the scope of discovery to be proportional, but it cannot be the basis to forgo key information entirely.

Further, Plaintiff may be entitled to punitive damages for her GBL § 349 claim. *Bueno v. LR Credit 18, LLC*, 269 F. Supp. 3d 16 (E.D.N.Y. 2017). One of the factors determining whether punitive damages are warranted is willfulness – pattern and practice information could show that LVNV willfully does not put procedures in place to prevent collection attempts on non-existent judgments, even after multiple lawsuits based on its conduct. *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613, 634 N.E.2d 940, 943 (1994).

Lastly, Plaintiff's RFPs #23-24 seek documents sufficient to demonstrate the same information sought by Interrogatories #14-15. Plaintiff should produce documents in response to these requests for the same reasons detailed above regarding the interrogatories.

### 2. Mandarich has not produced definitions for the codes and abbreviations in the produced documents.

Plaintiff's RFP #19 seeks definitions for any codes and abbreviations contained in the documents. Mandarich requested on the February 7 call with Plaintiff that Plaintiff send them a list of the codes and abbreviations that Plaintiff needs defined. On February 7, 2020, shortly after the call, Plaintiff did so. On February 15, 2020, Mandarich represented that it did not include definitions for the codes and abbreviations in its supplemental production for that date, but that Mandarich was not refusing to answer the request. Plaintiff did not find this ambiguity sufficient, particularly by February 24, more than a week later, when the definitions still had not been produced. Plaintiff's February 24, 2020 Letter sought definitions of the codes by February 25, 2020, and stated that otherwise Plaintiff would make an application to the Court. After giving Mandarich until March 2, 2020 to produce the definitions without any response from Defendant, Plaintiff now so moves.

Codes and abbreviations are important for reading the documents produced, particularly the account notes. Many of these codes particularly refer to Mandarich's understanding of the judgment and the status of the account, a key issue in this case.

### 3. Mandarich has put the "fraud packet" and related documents at issue, and thus they should be produced.

Mandarich's supplemental responses (**Exhibit F**) contain an amended response to Plaintiff's First Set of Interrogatories #11 that states "Fraud packet for another person's account was inadvertently uploaded to Plaintiff's account which generated the August 23, 2019 Letter." However, aside from two entries in the account notes with limited information ("Image Imported

3

with a description of: NY Fraud packet (Deleted by: LE)"; "Image deleted with a description of: NY Fraud packet"; and "Please disregard previous entry not for this account"), no other documents have been produced sufficient to substantiate Mandarich's argument. The August 23, 2019 Letter is one of Mandarich's most egregious violations, an attempt to collect on the non-existent judgment after Ms. Fritz had already provided them notice that the judgment had in fact been vacated. For Mandarich to rely on its affirmative defense, they must waive any objection to producing documents showing the fraud packet and its alleged inadvertent upload to Plaintiff's account. Plaintiff is therefore seeking the fraud packet, documents sufficient to show why uploading the fraud packet would cause the letter to be generated when it appears from the account notes that the error was caught the day of and accordingly deleted, and documents sufficient to show that it was meant to be uploaded to another person's account, such as account notes.

### 4. Mandarich has not produced numerous documents referenced in the produced account notes and policies.

Mandarich has not produced or otherwise addressed a number of account note entries that appear to reflect documents, itemized in the February 24, 2020 Letter. *See* **Exhibit F**. The documents evinced by these entries are transparently relevant even beyond being reflected in the account notes for Plaintiff's account during the time Mandarich was attempting to collect on it. There appears to be, among others:

1. A LexisNexis pull for Plaintiff;
2. An "Initial Attorney Review Pass – Judgment";
3. A spreadsheet "Book3.xlsx";
4. Four "complaints."

Additionally, in the first set of documents produced by Mandarich, two crucial documents or screens were referenced – an Attorney Meaningful Involvement Procedure "checklist" and a "Complaint Pod." Meaningful attorney review, or lack thereof, is a crucial element of Plaintiff's claims against debt collection law firm Mandarich, as Mandarich itself seems to recognize having produced its policies where these documents or screens are referenced. But the policies cannot be fully understood without having these referenced documents, and similarly the account notes cannot be fully understood without having the documents referenced therein.

### 5. The documents are not privileged.

Plaintiff's RFP #11 seeks Mandarich's account notes or collection notes regarding Ms. Fritz, the putative debt, and attempts to collect on the putative debt. Mandarich has objected that these documents are privileged and workproduct. Mandarich's privilege log produced on February 18, 2020, does not reference any withheld documents from the relevant time period other than a retainer agreement with a service provider. Further, "collection notes" are not per se privileged or workproduct. An attorney acting as a debt collector rather than an attorney does not confer privilege onto the documents. *See Avoletta v. Danforth*, No. 3:11-cv-1126-WWE, 2012 WL 3113151, at *2 (D. Conn. July 31, 2012). Documents prepared in the ordinary course of business absent the prospect of litigation are not protected by workproduct privilege. *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, 279 F.R.D. 140, 146 (S.D.N.Y. 2011) *quoting Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 160 F.R.D. 437, 448-449 (S.D.N.Y. 1995). Even where state court collections litigation has taken place, debt collector account notes have been

4

found to not be "materials prepared in anticipation of litigation" or otherwise privileged. *Mohr v. Sec. Credit Servs., LLC*, 141 F. Supp. 3d 179, 182-183 (N.D.N.Y. 2015). The response should be amended accordingly and the documents produced.

Plaintiff's RFP #14 seeks the communications regarding Plaintiff, the putative judgment, and attempts to collect on the putative judgment. In response Mandarich has only produced the aforementioned 10 pages of letters and their enclosures already attached the Complaint. It strains credulity to assert that there are no communications between Mandarich and its co-Defendants, not to mention internal communications of Mandarich. These communications must be produced.

Respectfully,

/s/

Ahmad Keshavarz

cc: all attorneys of record via ECF

## CERTIFICATE OF CONFERENCE

I have attempted to resolve these matters without Court involvement, both in writing and on the telephone, but those efforts have proven unsuccessful.

On December 10, 2019, Plaintiff propounded her first set of discovery requests. *See* **Exhibit A**. On January 10, 2020, Mandarich only provided responses as to the Requests for Admission. Correspondingly Plaintiff's counsel reached out to all parties and conferred by phone on January 15, 2020 at 1:30 PM. Plaintiff consented to an extension of the deadline until January 22, 2020. Mandarich produced responses to the First Discovery. **Exhibit B** (Mandarich Responses). Plaintiff sent Defendants a letter on January 28, 2020 outlining deficiencies and issues with discovery. *See* **Exhibit C** (January 28, 2020 Letter). Mandarich did not respond to this letter. On February 7, 2020, Plaintiff's and Mandarich's counsel conferred by phone, wherein Plaintiff noted that a number of extensions had been given by this point and that any issues not resolved by Mandarich's supplemental production and responses on February 14, 2020 would be considered at an impasse, and Plaintiff would make an application accordingly. Plaintiff also sent Mandarich a letter with a list of the codes and abbreviations that needed to be defined. **Exhibit D** (February 7, 2020 Letter). On February 11, 2020, Plaintiff sent a letter to Mandarich memorializing this phone conversation. **Exhibit E** (February 11, 2020 Letter). On February 14, 2020, Mandarich produced supplemental responses that maintained the objections to the pattern and practice requests. **Exhibit F** (Mandarich's Supplemental Responses). On February 24, 2020, Plaintiff noted that the codes and abbreviations had still not been produced and additional document deficiencies, and call for production by February 25, 2020. **Exhibit G** (February 24, 2020 Letter). Because Mandarich's counsel had a bounceback email noticing that she was out of town until February 26, 2020, Plaintiff decided to wait until March 2, 2020, to see if Defendant would produce the documents or otherwise respond. Mandarich did not. Thus the parties were at an impasse and Plaintiff now moves to compel.

Respectfully,

/s/

Emma Caterine