# AHMAD KESHAVARZ
*Attorney at Law*

---

16 COURT ST., 26TH FLOOR  
BROOKLYN, NY 11241-1026

WWW.NEWYORKCONSUMERATTORNEY.COM  
E-mail: ahmad@NewYorkConsumerAttorney.com

Telephone: (718) 522-7900  
Fax: (877) 496-7809

March 3, 2020

VIA ECF  
Magistrate Judge Peggy Kuo  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, NY 11201

      Re:    **Letter motion to compel documents and interrogatories from Defendants LVNV Funding, LLC and Resurgent Capital Services, LP.**
*Fritz v. LVNV Funding, LLC, et al.,* **No. 1:19-cv-05255-ENV-PK**

Dear Judge Kuo:

The undersigned, along with co-counsel at CAMBA Legal Services, represent Plaintiff Giselle Fritz in this suit against Defendants for their violations of the Fair Debt Collection Practices Act, and for related claims.

## BACKGROUND

LVNV Funding, LLC and its servicer Resurgent Capital Services, LP (collectively "LVNV") are a debt collection enterprise with a general practice of illegal debt collection, specifically collecting on judgments that are non-existent due to them being vacated or settled. Again and again LVNV has been sued for collecting nonexistent judgments.[1] These collection efforts severely harm consumers and fixing the problem is easy; in this case, it would have just taken a two minute check of the court database to discover the problem. In light of this, we asked LVNV why it has not changed its practices or taken these simple corrective steps, but LVNV refuses to answer.

Plaintiff Giselle Fritz's story demonstrates the harms inflicted on consumers generally by LVNV. LVNV entered a default judgment against Ms. Fritz on July 16, 2007 – Ms. Fritz had not received notice of the lawsuit in any manner and consequently did not appear in court. When her attorneys CAMBA Legal Services, Inc., a non-profit legal services provider, discovered the judgment in 2011 during a routine search of eCourts (New York State's online court database), she immediately moved by Order to Show Cause on July 27, 2011 to vacate the Judgment. Ms. Fritz's Order to Show Cause highlighted that the affidavit of service could not be accurate because her doorman would have been on duty and would have accepted service as well as prevented the process server from directly approaching Ms. Fritz's door. Faced with this, LVNV stipulated to vacate the default judgment and on August 30, 2011 stipulated to discontinue the

---

[1] *See e.g. Oglesby v. LVNV Funding, et al.,* 1:19-cv-01834-AMD-CLP (EDNY); *Phillips v. LVNV Funding, et* al, 1:15-cv-07088 (SDNY); *Francis v. LVNV Funding LLC et al,* 1:15-cv-03757-MKB-JO; *Rosas v. Arrow Financial Services, LLC et al,* 1:14-cv-06462-MKB-JO (EDNY); *O'Neill v. LVNV Funding, LLC et al,* 1:14-cv-07636-ER-DCF (SDNY); *Martinez v. LVNV Funding LLC et al,* 1:14-cv-00677-RRM-MDG (EDNY); and *Gomez v. Inovision-Medclr Portfolio Group, LLC et a*l, 1:13-cv-07395-RWS (SDNY).

case. It seemed to Ms. Fritz that the matter was finished – but then three years later, Defendant Nations Recovery Center, Inc.[2] on behalf of LVNV attempted to collect on the non-existent judgment. Ms. Fritz responded by requesting that NRC verify the debt, to which neither NRC or LVNV responded. Instead, NRC mailed another letter seeking to collect on the non-existent judgment on October 22, 2018. To make matters worse, on or around January 15, 2019, Defendant Mandarich Law Group on behalf of LVNV sent a debt collection letter also seeking to collect on the non-existent judgment. On February 15, 2019, Ms. Fritz sent two separate letters to NRC and Mandarich respectively giving notice that the judgment was vacated and enclosing a copy of the stipulation showing so. Rather than ceasing collection, Mandarich on behalf of LVNV sent two more letters attempting to collect on the non-existent judgment on June 4, 2019 and August 23, 2019, even attaching the (vacated) judgment to "substantiate" the debt. LVNV, as a party to the 2011 Stipulations vacating the Judgment and dismissing the case, knew from the beginning that it had no right to try to collect on the judgment but nevertheless and through multiple debt collector agents tried to collect on the non-existent judgment all the same.

Ms. Fritz suffered significant emotional distress, embarrassment, and humiliation as a result of LVNV's repeated unlawful attempts to collect on the non-existent judgment. Ms. Fritz has been hounded for years by debt collectors who sued her for debts that were inflated or that she did not owe, and obtained judgments against her more than once through "sewer service." Just when she thought she had gotten past this difficult time in her life, LVNV repeatedly tried to collect on a non-existent judgment, and continued to do so even after she sent letters disputing the debt. Because of LVNV's conduct, Ms. Fritz has no sense of security that she will ever be free from the harassment and possible financial consequences of unlawful debt collection. She feels like she is in a nightmare she cannot get out of; she is always waiting for another letter.

## ARGUMENT

On September 13, 2019, Plaintiff filed her Original Complaint and Jury Demand. LVNV filed their answer on November 15, 2019. It was important to Defendants to enter a protective order, so the parties filed a joint proposed protective order on December 4, 2019 [DE 34] that was so-ordered by Your Honor on December 5, 2019 [DE 35-1]. On December 10, 2019, Plaintiff propounded her first set of discovery requests. *See* **Exhibit A** (First Set of Discovery). LVNV's Responses and document production are deficient. **Exhibit B** (LVNV's Responses to First Discovery). As outlined in detail in the Certificate of Conference below, Plaintiff has provided LVNV multiple extensions to answer discovery and conferred (or attempted to confer) multiple times, but these issues have not been resolved. Consequently, Plaintiff moves to compel as below.

### 1. Privilege log.

LVNV has not produced a privilege log despite significant redactions on documents such as the servicing agreement. In compliance with Local Civil Rule 26.2, LVNV must produce a privilege log for all documents redacted or withheld on the basis of privilege.

### 2. LVNV's document production is deficient.

There are 16 sets of document deficiencies which Plaintiff raised with LVNV and have not been supplemented. They are as follows:

---

[2] Defendant NRC has defaulted in this action. *See* DE 26.

i. The produced "Account Event History" shows an entry dated September 17, 2019 that reads "Keeper req recvd from Centerpoint dt 20190917 due to asset located" – Plaintiffs believes this represents that there was collection activity on the account after this lawsuit was filed on September 13, 2019 and received by Defendants on September 16, 2019. If LVNV attempted to collect on the non-existent judgment after this lawsuit was filed, there may be additional claims, so this issue needs to be clarified as soon as possible, and thus Plaintiff is calling for the production of whatever documents pertain to this entry or otherwise show attempted collection activity after the filing of this Lawsuit.

ii. A document referred to as "Account_RepeatLitigant table."

iii. An email from Rubin & Rothman dated August 15, 2011 that appears to have given LVNV notice that the judgment had been vacated.

iv. There a number of entries in the Account Even History (such as but not limited to, on December 10, 2018, "LAI – LEGAL; ASSETS IDENTIFIED, EXECUTION IN PROCESS") which appear to show executions on assets, bank accounts, and wages. Any attempts to collect on the non-existent judgment are not just relevant but at the core of LVNV's pattern and practice of collecting on non-existent judgments, and should be produced accordingly (even if they were not actually sent or served).

v. The Account Event History shows a "Placement Balance" as $0.00 for July 17, 2014. Upon information and belief, some debt collection systems will show a balance like this when they are updated to show a judgment has been vacated or an account has otherwise been closed out. Defendants must produce all documents related to and explaining this entry.

vi. Similarly, there are entries dated August 17, 2011, July 14, 2011, June 15, 2011, and July 28, 2008 that read "Delete entire account." Upon information and belief, these entries may reflect instructions to close the account, possibly due to LVNV learning that the judgment had been vacated. As such, Defendants must produce all documents related to and explaining these entries.

vii. There is an entry dated October 2, 2014 that reads "General Correspondence – ROJ NOTIFICATION

viii. The Resurgent Attorney Operations Manual throughout references a "servicer portal" called "The Bridge" that, among other things, appears to record complaints by consumers. Defendants must produce screenshots of all screens on "The Bridge" related to Ms. Fritz, the putative debt, and attempts to collect the putative debt.

ix. Although no privilege log has yet been produced (see above), the redaction of the provisions for "Time-Barred Debt" in the Service Level Agreement governing the account at issue is plainly improper as the underlying debt for the non-existent judgment was itself time-barred.

3

        While there are not claims of suing on a time-barred debt in this case, the policies of LVNV and its servicers regarding time-barred debt are relevant as general information regarding their review of accounts prior to taking action.

    x.    Similarly, the section of the same agreement titled "Adverse Litigation and Counterclaims" has been redacted, which is also plainly improper as LVNV themselves seemed to review an "Account_RepeatLitigant table" regarding Ms. Fritz, and thus the provisions of this section likely apply to her.

    xi.    Again, another section of the same agreement titled "Recall of Accounts" has been redacted, perhaps most improperly as how LVNV recalled the account from Defendant NRC prior to placing the account with Defendant Mandarich bears on the respective parties' liability. Depending on the company, some debt collectors will code the account (such as noting that the judgment has been vacated) themselves before it is recalled while in other situations the servicer or debt buyer will code the account once it has been recalled.

    xii.    LVNV has produced a largely redacted "First Amendment to Collection Services Agreement." Plaintiff cannot evaluate the Agreement on the merits if material amendments are withheld. The agreement should be produced unredacted or the privilege log produced accordingly.

    xiii.    LVNV has not produced the definitions for any of the abbreviations or codes used in their produced documents.

## 3. Plaintiff is entitled to pattern and practice information in order to establish a violation of GBL § 349 and entitlement to punitive damages.

Plaintiff's Interrogatories #14 ("How often have you attempted to collect on a non-existent judgment from January 1, 2018 to the present?") and #15 ("How many times have you been sued over attempting to collect on a non-existent judgment from January 1, 2018 to the present?") seek pattern and practice information as to how often LVNV has collected on a non-existent judgment and how many times it has been sued over attempting to collect on a non-existent judgment. **Exhibit A**. Plaintiff's Requests for Production #23 and #24 seek documents sufficient to demonstrate the same. LVNV objects that the information sought is irrelevant to the allegations of the Complaint. *See* **Exhibit B.**

To the contrary, in order for Plaintiff to establish her GBL § 349 claim, she must show that LVNV attempting to collect on a non-existent judgment as to Ms. Fritz was "consumer-oriented" conduct. One way of showing such conduct is "consumer-oriented" is showing it was the pattern and practice of the business. *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 ERK, 2012 WL 661456, at *14 (E.D.N.Y. Feb. 28, 2012), *report and recommendation adopted,* No. 10 CV 3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) ("a policy and practice of intentionally filing time-barred claims"). In fact, such allegations are contained in Plaintiff's Original Complaint (¶¶ 80-84).

Further, Plaintiff may be entitled to punitive damages for her GBL § 349 claim. *Bueno v. LR Credit 18, LLC*, 269 F. Supp. 3d 16 (E.D.N.Y. 2017). One of the factors determining whether

4

punitive damages are warranted is willfulness – pattern and practice information could show that LVNV willfully does not put procedures in place to prevent collection attempts on non-existent judgments. *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613, 634 N.E.2d 940, 943 (1994).

## CONCLUSION

For the above reasons, Plaintiff prays the Court order LVNV to produce all documents responsive to Plaintiff's Requests for Production with all objections waived, and to compel answers by March 13, 2020.

Respectfully,

/s/

Ahmad Keshavarz

Enclosures (as stated)
cc: all attorneys of record via ECF

## CERTIFICATE OF CONFERENCE

I have attempted to resolve these matters without Court involvement, both in writing and on the telephone, but those efforts have proven unsuccessful.

On December 10, 2019, Plaintiff propounded her first set of discovery requests. *See* **Exhibit A**. On January 10, 2020, LVNV had only provided responses as to the Requests for Admission. Correspondingly Plaintiff's counsel reached out to all parties and conferred by phone on January 15, 2020 at 1:30 PM. Plaintiff consented to an extension of the deadline until January 22, 2020. By that date, LVNV provided responses as to the Interrogatories (**Exhibit B**) but did not provide any responses nor documents as to the Requests for Production. Plaintiff sent Defendants a letter on January 28, 2020 outlining deficiencies and issues with discovery, including LVNV's failure to respond to the Requests for Production and to provide documents. *See* **Exhibit C** (January 28, 2020 Letter).

In this letter, Plaintiff also offered one more extension until January 31, 2020 for LVNV to provide responses as to the Requests for Production. LVNV refused this offer on January 30, 2020, arguing that they should be given until February 14, 2020 to complete the document production – more than a month after the original deadline for discovery. Plaintiff responded by email the same day that having provided "an additional three weeks from the standard 30 days" was more than generous and it was not "unreasonable" for LVNV to respond by that time. On February 5, 2020, LVNV produced supplemental responses to the Interrogatories and Requests for Admission, but did not produce responses to the Requests for Production or documents, stating that they "hope" to produce it "next week." This failure to provide a date certain for long overdue discovery would not be sufficient reassurance in general, let alone with previous extensions were given and subsequently ignored. However, Plaintiff once again offered to give LVNV an extension to February 12, 2020 if it confirmed that it would provide responses and documents on that date by February 6, 2020 at 5 PM. Finally, Plaintiff's counsel attempted to call LVNV's counsel on February 7, 2020, leaving a voicemail stating that we were seeking his agreement to February 12, 2020 as a date certain for production and we would be making an application. On February 12, 2020, LVNV responded that they needed until February 19, 2020 to produce the documents. On February 19, 2020 LVNV produced responses and some documents. On February 26, 2020, Plaintiff wrote a letter to LVNV outlining the numerous discovery deficiencies. **Exhibit D** (February 26, 2020 Letter). On February 28, 2020, LVNV wrote stating that they were willing to discuss the matter in the next week and would produce unredacted documents. **Exhibit E** (February 28, 2020 Letter). However Plaintiff has already granted numerous extensions to LVNV, and LVNV's latest letter does not address its inadequate responses as to Interrogatories #14-15 or RFPs #23-24, and thus Plaintiff is moving to compel.

Signed: Brooklyn, NY
    March 3, 2020
/s/

Emma Caterine, Esq.