# AHMAD KESHAVARZ

*Attorney at Law*

---

16 COURT ST., 26TH FLOOR
BROOKLYN, NY 11241-1026

WWW.NEWYORKCONSUMERATTORNEY.COM
E-mail: ahmad@NewYorkConsumerAttorney.com

Telephone: (718) 522-7900
Fax: (877) 496-7809

July 1, 2020

VIA ECF
Magistrate Judge Peggy Kuo
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> **Re:  Letter renewing motion to compel pattern and practice discovery from LVNV Defendants, and to enforce.**
> ***Fritz v. LVNV Funding, LLC, et al.,* No. 1:19-cv-05255-ENV-PK**

Dear Judge Kuo:

The undersigned, along with co-counsel at CAMBA Legal Services, represent Plaintiff Giselle Fritz in this suit against Defendants for their violations of the Fair Debt Collection Practices Act and New York General Business Law § 349.

## ARGUMENT

There are two sets of issues before the Court in this Motion. Plaintiff first asks the Court to determine whether the relevance of pattern and practice discovery concerning other lawsuits against LVNV and Resurgent (together, "LVNV") outweighs their burden to produce it. While LVNV have estimated the burden of reviewing all lawsuits against them to find responsive ones (**Exhibit H**), this information is highly relevant and the Plaintiff is willing to eliminate Defendant's burden by reviewing the documents ourselves. Second, we move to enforce portions of Your Honor's April 3, 2020 Order granting Plaintiff's Motions to Compel, which LVNV have not complied with nearly three months later.

### 1. Pattern and practice information via allegations in other lawsuits of attempting to collect on non-existent judgments.

#### i.    Plaintiff's proposal to reduce burden

On June 4, 2020, LVNV produced an affidavit attesting to the burden of identifying and producing other lawsuits containing allegations that LVNV  attempted collect on a vacated judgment. **Exhibit H**. LVNV alleges there are 6,000 lawsuits stored electronically on a program called CounselLink with "no automated way" to review those cases, and that review would take "an average of ten minutes per file" for a total of 1,000 hours. *Id.* LVNV asserts the review would take several months because they have "no spare employees with the necessary time to undertake such a search." *Id.* LVNV's counsel later added that the legal department has two attorneys and seven paralegals, but LVNV refused to amend the affidavit to state the same.

That same day, the parties conferred, and Plaintiff asked about the time, resources, and procedures to produce only the complaints in all 6,000 lawsuits for Plaintiff's counsels' review.

**Exhibit F**. Plaintiff also asked about the number of cases per year to discuss potentially limiting the timeframe. *Id.* LVNV only answered the latter and only did so partially, stating that there were 528, 505, and 590 complaints in 2017, 2018, and 2019 respectively. **Exhibit G**.

LVNV's description of the potential review process seems designed to create as burdensome a review as possible. It is not necessary for LVNV to review every complaint individually. LVNV can produce the complaints in a PDF format, as they are apparently kept, so that Plaintiff's attorneys can merge the documents and perform keyword searches to identify the applicable lawsuits. LVNV's ability to pull up the number of complaints for 2017, 2018, and 2019 suggests that CounselLink has the capacity to create a list of complaints per year, so the burden would presumably be no more than selecting all the complaints and uploading them to a secure server like Dropbox, a process we estimate based on our own use of Dropbox to take no more than thirty minutes to an hour. Because the documents at issue are all publicly filed complaints, they do not require a privilege review. Under this review process there is practically no burden or cost to LVNV, and Plaintiff may review all 6,000 lawsuits in only a few hours.

> ii.    **The lawsuits' relevance to evincing LVNV's pattern and practice outweighs the burden of producing them.**

The requested information is relevant for establishing (1) that Defendants' conduct is consumer-oriented, as required for a violation of GBL § 349, and (2) willfulness and public harm for the purpose of entitlement to punitive damages under GBL § 349. It is important for Plaintiff to know how often LVNV attempted to collect on vacated judgments, both to measure the scope of public harm and to present a full picture of it to the jury. And despite LVNV's suggestions that the cases identified by Plaintiff in her Complaint are the only such cases, Plaintiff recently located another responsive case against LVNV in which they were represented by Arthur Sanders. **Exhibit I** (*Basset* Case). Indeed, it appears that the decisions cited in Plaintiff's Complaint may only be the tip of the iceberg. Establishing the scale of this illegal practice by identifying all relevant lawsuits is very relevant to both LVNV's willfulness and public harm.

LVNV's choice to identify the number of complaints only for 2017, 2018, and 2019 suggests they are hoping to limit production to this timeframe. This would deprive Plaintiff of relevant discovery without substantially minimizing LVNV's burden. If we were to assume 10% of the complaints involved relevant allegations, 600 instances over 11 years[1] is substantially different than 162 instances over 3 years. For this reason, LVNV should be compelled to produce for Plaintiff's review the 6,000 PDF complaints in response to Plaintiff's First Set of Discovery Requests, Request for Production (RFP) #24 and Third Set of Discovery Requests, RFP #1.

> 2.  **LVNV's Failure to Comply with April 3, 2020 Order.**

> i.    **Other instance of collecting on a non-existent judgment.**

LVNV was ordered to produce an affidavit detailing the burden of producing responses on two issues: 1) as detailed above, Plaintiff's pattern and practice requests for lawsuits alleging attempts to collect on vacated or non-existent judgments (**Exhibit J**, Trans. 42:18-23); and, 2) to Interrogatory #14, which asks how many times LVNV Defendants have attempted to collect on a nonexistent judgment. **Exhibit J**, Trans. 39:14-16. LVNV is not in compliance with the April 3, 2020 Order because their Affidavit does not address reviewing these non-lawsuit instances at all. Nor do their amended responses to Plaintiff's First Set of Discovery, Interrogatory No. 14,

---

[1] Upon information and belief, LVNV Defendants' CounselLink only tracks cases back to 2008.

address burden. *See* **Exhibit K** (LVNV Amended Response).

Resurgent's Attorney Manual produced in discovery suggests that information about attempts to collect non-existent or vacated judgments is tracked and could be gathered and produced. *See excerpt*, **Exhibit L**. It states that "dissatisfaction" should not be reported to Resurgent, only complaints that "allege a specific violation of law or behavior that is unfair, deceptive or abusive in nature." *Id.* Non-lawsuit complaints are submitted through a different channel than "written disputes, verification requests, cease and desists, refusals to pay, fraud affidavits, general correspondence, death certificates, debt payment schedules, attorney notifications, and Complaints or Lawsuits," so the relevant database would not contain duplicates of documents on CounselLink. *Id.* The diagram illustrating the process for reporting these complaints is well-illustrated in the manual in four stages, showing that the complaint is reported to "The Bridge" platform along with any documents, that the complaints are updated as they progress and further correspondence is uploaded, and finally that the complaints are certified on a monthly basis to be "complete and accurate." *Id.* Plaintiff requests an Order waiving objections to Interrogatory #14 and RFP #23 for failure to comply with the April 3, 2020 Order and requiring LVNV to state how many times it attempted to collect a vacated or non-existent judgment, including any complaints that can be acquired through The Bridge platform and any other system they have to track non-lawsuit complaints.

### ii.    Changes to practices after lawsuits

LVNV was also ordered to respond to Plaintiff's Second Set of Discovery Requests, Interrogatory #3, which asks "what steps were taken, if any, to correct or change the practices that were the subject of" each of 15 different lawsuits. As Your Honor stated on April 3 with the example of "an employee that had been fired," changes or lack thereof to LVNV Defendants' policies are crucial to determine whether "whatever happened was willful, and knowing." **Exhibit I**, Trans. 48:20, 49:24-25.

In their April 23, 2020 amended responses, LVNV provided the same boilerplate and nonresponsive answer concerning each specified lawsuit in which they were a party, stating that LVNV/Resurgent "has robust procedures to ensure that it does not attempt to collect on non-existing judgments" by relying on its vendors to report vacated judgments.[2] **Exhibit J.**

This vague answer does not even bother to identify the alleged "robust procedures" and is not responsive to the interrogatory, which expressly seeks "correct[ions] or change[s]" to practices.  Accordingly, Plaintiff now seeks to enforce the Court's Order. LVNV must either identify its changes in response to the lawsuits, or state explicitly that there were none.

### CONCLUSION

For the above reasons, Plaintiff prays the Court: (1) order Defendants to produce the complaints for all lawsuits so that Plaintiff may identify the cases regarding the pattern and practice sought; and (2) enforce its April 3, 2020 Order as to LVNV Defendants.

Respectfully,

/s/

Ahmad Keshavarz

---

[2] The boilerplate responses from LVNV and Resurgent vary slightly in wording but not in substance.

Enclosures (as stated)
cc: all attorneys of record via ECF

## CERTIFICATE OF CONFERENCE

I have attempted to resolve these matters without Court involvement, both in writing and on the telephone, but those efforts have proven unsuccessful.

For the sake of brevity Plaintiff will assume familiarity with the events and motion practice leading up to the oral rulings by this Court on April 3, 2020. *See* DE 37-45. After Plaintiff's Motions were granted in part, Plaintiff sent a letter on April 9, 2020 to all Defendants summarizing our understanding of the rulings made on April 3, 2020. **Exhibit A** (April 9, 2020 Letter). In compliance with the April 3, 2020 Order, the parties filed and the Court so-ordered a schedule by which the Defendants would comply with the Order. *See* DE 46. As such LVNV Defendants (LVNV Funding, LLC and Resurgent Capital, LLC) were ordered to comply by April 24, 2020. By April 23, 2020, LVNV had produced their amended responses to Plaintiff's First and Second Sets of Discovery Requests. They did not produce responses to Plaintiff's Third Set of Discovery Requests until June 12, 2020.

Beyond the failure to respond to the Third Set, the responses were deficient in many regards, so Plaintiff sent a letter on April 27 to LVNV Defendants laying out those deficiencies. **Exhibit B** (April 27, 2020 Letter). Plaintiff and LVNV Defendants' counsel conferred on May 11, 2020, and Plaintiff sent a letter memorializing what was agreed to during that conversation. **Exhibit C** (May 13, 2020 Letter). When LVNV Defendants had not given Plaintiff an update by May 21, 2020, Plaintiff had to send another letter. **Exhibit D** (May 21, 2020 Letter). On June 2, 2020, Plaintiff sent LVNV Defendants a letter giving notice of our belief that we were at an impasse on many issues and providing a final opportunity to confer before motion practice. **Exhibit E** (June 2, 2020 Letter). The parties conferred a final time on June 4, 2020, and Plaintiff memorialized that conversation in a letter on June 5, 2020. **Exhibit F** (June 5, 2020 Letter). Finally on June 12, 2020, LVNV Defendants stated that they would not be "provid[ing] any additional affidavits explaining their position on these issues," confirming our belief that we were at an impasse. **Exhibit G** (June 12, 2020 LVNV Email).


Signed: Brooklyn, NY
        July 1, 2020
/s/

Emma Caterine, Esq.